Jimmy DILL

v.

CITY OF CLARKSVILLE

Court of Appeals of Tennessee,
AT NASHVILLE.

April 07, 2015

Filed May 27, 2015

Application for Permission to Appeal
Denied by Supreme Court
October 15, 2015

Peter M. Napolitano, Clarksville, Tennessee, for the appellant, Jimmy Dill.

W. Timothy Harvey and Rebecca J. Garman, Clarksville, Tennessee, for the appellees, The City of Clarksville and Mayor Johnny Piper, and Alonzo Ansley, Chief of Police.

## OPINION

Arnold B. Goldin, J., delivered the opinion of the Court, in which J. Steven Stafford, P.J., W.S., and Kenny Armstrong, J., joined.

Plaintiff was terminated from his employment as a City of Clarksville police officer in August 2010. The trial court affirmed, and Plaintiff appealed. We determined that the City had failed to follow its disciplinary procedures when it terminated Plaintiff's employment, vacated the termination, and remanded the matter. Upon remand, the City upheld termination of Plaintiff, and the trial court again affirmed. We affirm.

This is the second appeal of this matter in this Court. The relevant background facts giving rise to the current appeal are not disputed. Plaintiff/Appellant Jimmy Dill ("Officer Dill") was employed by the City of Clarksville ("the City") as a police officer for twenty-three years until the City terminated his employment in August 2010.

On August 4, 2010, Officer Dill was advised by memorandum that he had been charged with violating certain general orders and provisions of the City Code ("the Code") in a July 2010 incident. He was advised that a "pre-decision discussion" with Chief of Police Alonzo Ansley ("Chief Ansley") was scheduled for August 9 and that he would have the opportunity to present statements, witnesses, and other relevant information at the August 9 meeting. In the course of the August 9 meeting, Officer Dill was presented with a notice of discipline terminating his employment effective that day. The notice also advised Officer Dill of the right to appeal the action. Officer Dill appealed the decision to terminate his employment to Clarksville Mayor John Piper ("Mayor Piper"), asserting that the decision was not supported by substantial and material evidence. Officer Dill also asserted that the procedure by which he was terminated violated his due process rights under the Code. The Mayor affirmed the decision, and Officer Dill filed a petition for a writ

of common law certiorari in the Chancery Court for Montgomery County. *Dill v. City of Clarksville*, No. M2012-00356-COA-R3-CV, 2012 WL 5431694, at *1 (Tenn.Ct.App. Nov. 6, 2012) ("*Dill I*").

In his petition for review, Officer Dill named the City, Mayor Piper, and Chief Ansley as Defendants. Officer Dill alleged that the decision to terminate his employment was arbitrary and capricious and was made in violation of his due process rights. He asserted that Section 1–1316 of the Code established the applicable disciplinary procedures and that the City had failed to follow those procedures. He prayed for the court to issue a writ of certiorari; for reversal of the termination of his employment; for reinstatement; for an award of back pay and benefits; and for an award of attorney's fees.

In December 2010, the City filed a motion to dismiss Mayor Piper and Chief Ansley and certain claims against the City. The City asserted in its motion that the only purpose of the common law writ of certiorari prayed for by Officer Dill is to review the record to determine whether the decision was illegal, arbitrary, fraudulent, or beyond the agency's jurisdiction. By order entered March 1, 2011, the trial court granted the City's motion to dismiss Mayor Piper and Chief Ansley. It also dismissed all claims against the City other than Officer Dill's request for a writ of certiorari review under Tennessee Code Annotated § 27–28–101.

The trial court heard the matter on August 4, 2011. By opinion entered August 15, 2011, the trial court determined that audio and video recordings established the infractions alleged by the police department "beyond any doubt." It further determined that Officer Dill received notice of the charges against him and was afforded the opportunity to respond and present information, statements, and witnesses. It

also found that "the record established a thorough investigation and documentation of the investigation." The trial court concluded that "due process requirements were met[,]" but that the City had failed to follow the procedures set-forth in Section 1–1316(f)(1)(b) of the Code, which provided:

b. Except as provided in subsection (f)(1)c., allegations of employee misconduct which could warrant reduction in pay, suspension without pay, demotion, or termination, will be thoroughly investigated and documented at the department level. Prior to the decision on any discipline by the department head, the employee will be afforded due process as set forth in subsection (C). Upon completion of the investigation and application of due process, the department head will decide whether to impose discipline, and what discipline to impose. If the department head decides to impose discipline of reduction in pay, suspension without pay, demotion, or termination, the department head will first forward the results of his or her investigation and decision, with all supporting documentation or materials, to the human resources department head. The human resources department head will verify that the employee was afforded due process, and that the discipline is appropriate and generally consistent. Upon such finding, the human resources department head will so notify the appropriate department head of the employee. The department head will then inform the employee in writing of the discipline decision, and will advise the employee of his or her right to appeal. The employee will have ten (10) calendar days to appeal the decision by notifying the human resources department head in writing. If the employee does not appeal the discipline decision, or does not appeal in a timely manner, the discipline shall become final.

The trial court determined that the matter was not referred to the head of human resources for review after the pre-decision hearing and before termination of Officer Dill as required by the section. The trial court ruled:

It is the opinion of this court that the failure to follow the rules set forth by Sec. 1–1316(f)(1)(b) demands that the court send this matter back to the City of Clarksville for that determination. The termination of the Petitioner meets the requirements of due process and is effective as of August 9, 2011, subject to human resources reviews.

In September 2011, the City filed a motion for entry of a final order or, in the alternative, for a relief from judgment pursuant to Tennessee Rule of Civil Procedure 60. In its motion, the City averred that the termination date recited by the court was in error, and that the correct termination date was August 9, 2010. Officer Dill filed a motion for clarification on October 5, 2011. In his motion, Officer Dill asked the court, *inter alia*, to clarify "what is to happen procedurally after the termination matter is sent back to the City and subjected to Human Resource[s] Director for a 'determination.'" Officer Dill additionally queried:

Respectfully, how does the Appellant and his counsel learn of and evaluate the City's Human Resource Director's review to determine if discipline was "equally applied and to the extent possible, was consistent and progressive in nature" pursuant to City Code § 1–1316(b).

Respectfully, if the City Human Resources Director determines that the termination was not equally applied, or consistent or progressive to Support termination, would that change the Court's

opinion that the Petitioner was afforded due process as required? In any event, does the Human Resources Director's determination either way trigger a new appeal to the Mayor?

Respectfully, the court's Opinion in the last paragraph is contradictory in that on the one hand, the Court finds:

> "the failure (of the city) to follow the rules set forth by Sec. 1–1316(f)(1)(b) demands that the court send this matter back to the City of Clarksville for that determination."

However, the last sentence states the "termination of the Petitioner meets the requirements of due process and is effective as of August 9, 2011, subject to Human Resources Review".

Respectfully, since the review by the Human Resources Director is part of the due process procedures and rights of Petitioner, and the court found this process was not followed, how then can the termination be upheld by the Court absent compliance with due process?

The City filed a response to Officer Dill's motion on October 17. In its response, the City stated that it had forwarded the trial court's August 15 opinion to the appropriate representatives for completion of the court's mandate. The City attached to its response correspondence from W. Timothy Harvey ("Mr. Harvey"), the City's attorney of record, to Will Wyatt ("Mr. Wyatt"), head of the City's human resources department, dated September 6, 2011, in which Mr. Harvey wrote:

> Would you please prepare to review the department head's determination of discipline along with the results of the investigation as the Human Resource Department head to determine if the employee was afforded due process and that the discipline is appropriate and generally consistent in context of Section 1–1316(b)? Will you please reduce to writing the review you undertake and include that record in the employee file, sending a copy to me? Will you please sign and date the document you prepare in that regard?

The City also attached an unaddressed, one-paragraph writing from Mr. Wyatt dated September 19, 2011, that stated:

> I have reviewed the supporting documentation provided by Chief Ansley in the termination of former Police Officer, Jimmy Dill. I have established that Officer Dill was afforded due process, and that the discipline of termination was appropriate and generally consistent.

On January 19, 2012, the trial court entered an order granting the City's September 2011 motion and denying Officer Dill's October 5, 2011, motion for clarification. It also entered an order adopting its August 2011 opinion "as a finding of fact" and corrected the order to reflect a termination date of August 9, 2010. The trial court stated that its order was final and dispositive of all the issues. Officer Dill filed a notice of appeal to this Court and asserted:

1) The trial court erred in its findings by failing to properly consider and apply all elements of common law and/or statutory review.

2) The trial court erred by refusing to consider relevant evidence.

On appeal in *Dill v. City of Clarksville*, we noted that, in his petition for certiorari and on appeal, Officer Dill asserted that the City violated his due process rights by terminating him in a manner that was inconsistent with the City Code. *Dill v. City of Clarksville*, No. M2012-00356-COA-R3-CV, 2012 WL 5431694, at *4 (Tenn.Ct. App. Nov. 6, 2012). We determined that the City failed to follow the disciplinary procedures then set-forth in Chapter 13, Sec. 1–1316(f)(1)(b) ("the section") of the

Code, which required the chief of police, as the department head, to refer the matter to the head of human resources for review before terminating Officer Dill's employment. *Id.* at *5. We accordingly held that Officer Dill had been deprived of his due process rights under the section. *Id.* We additionally stated that the record contained material evidence supporting the decision to terminate Mr. Dill, but we were unable to determine whether termination was arbitrary or capricious where it had not been sufficiently reviewed by the head of human resources. *Id.* We opined in *Dill I*:

> The record shows that Chief Ansley did not forward the materials accumulated in the investigation of Mr. Dill to the human resources department prior to making the decision to terminate him, as required by Code § 1–1316(f)(1)(b) [of the Clarksville City Code]. The failure to follow the disciplinary procedure violated Mr. Dill's right to due process of law, as due process is defined in the Code, and the trial court's subsequent return of the matter to the City of Clarksville was inadequate to cure the deprivation. Mr. Dill is entitled to relief.

*Id.* at *4. We noted in the footnote to that paragraph:

> FN6. On the audio recording of the afternoon session of the pre-decision discussion, Chief Ansley states that "I've given this much thought. I've followed policy. I've called the HR director." At oral argument, counsel for the City acknowledged that there was "nothing more" than the call referenced by Chief Ansley relative to the requirement in the code that the department head (here, Chief Ansley) "forward the results of the investigation and decision, together with supporting documentation or materials."

*Id.* n.6. We held:

> We do not agree with the trial court's statement that "minimum due process

under Sec. 1–1316(c) is satisfied as well as the requirements of constitutional due process." While the record shows that Mr. Dill was given notice of the charges against him and an opportunity to be heard, it is the failure of the City to follow the disciplinary procedure set forth in the Code that deprived Mr. Dill of due process. We have reviewed the documents in the administrative record, as supplemented with the CD/DVD filed with the trial court; there is material evidence in support of the decision to discipline Mr. Dill. The failure to refer the matter to the head of the human resources department prior to making the decision to terminate Mr. Dill, however, not only violates the Code but deprives the court of the opportunity on certiorari review to determine whether the penalty was imposed in an arbitrary or capricious manner.

*Id.* at *5. In the footnote to that statement, we stated:

> FN7. Code § 1–1316(b) provides that "[e]mployees of the city shall be treated fairly in all aspects of employment[,]" that any discipline imposed "will be applied at the appropriate level[,]" and that discipline "will be equally applied and, to the extent possible, will be consistent and progressive in nature." We have reviewed the transcript of the hearing on pending motions held on November 30, wherein Mr. Dill, through counsel, raised the issue of whether "the discipline proposed by Chief Ansley, termination, would be a consistent application of the disciplinary process given the charges against Mr. Dill." We do not agree with the court that Mr. Dill was given the opportunity to address the issue of consistency of discipline; the return of the case to the city to allow for

review by the head of the human resources department did not comply with the disciplinary process and did not afford Mr. Dill the opportunity to present evidence bearing on the issue. Moreover, the September 19, 2011 letter from Mr. Wyatt stated, without elaboration, that "the discipline of termination was appropriate and generally consistent." This is insufficient to support a finding that Mr. Dill's termination was in accordance with Code § 1–1316(b).

*Id.* n.7. We reversed the judgment of the trial court, vacated the decision to terminate Officer Dill's employment, and remanded the case for further remand to the City "for a determination of whether [the] proposed termination complies with Code § 1–1316(b)." *Id.* at *5.

After the mandate issued in *Dill I*, the City filed a motion for remand in the trial court and Officer Dill filed a motion for back pay and benefits. The City filed a motion to strike Officer Dill's motion, asserting that Officer Dill prayed for an award of back pay and benefits in his October 2010 petition for certiorari and that, in March 2011, the trial court dismissed all claims against the City except for certiorari review under Tennessee Code Annotated § 27–8–101. The City asserted that Officer Dill had waived the issue by not raising it as an issue for appeal in *Dill I*, and that the trial court did not have jurisdiction to award back pay on remand where it was beyond the scope of this Court's order remanding the matter. The City submitted that the only action permissible was a remand to the City for a determination by the head of the City's human resources department of whether the termination of Officer Dill's employment would be appropriate and generally consistent with other instances of discipline in compliance with the Code. Further, the City relied on *Cunningham v. Board of Education for Grundy County,*

App. No. 85-302-II, 1986 WL 10692 (Tenn. Ct.App. Oct. 1, 1986), for the proposition that an award of back pay is beyond the scope of relief available under a common law writ of certiorari.

After cross-motions and responses in opposition thereto with respect to the scope of review on remand to the City, in April 2013, the trial court remanded the matter to the City "for determination of whether [Mr.] Dill's proposed termination complies with Code Section 1–1316(b)." The trial court remanded the matter to the City's human resources director "for a full review as contemplated by Code Section 1–1316(b)." The trial court ruled:

> the Human Resources Department head will verify that the employee was afforded due process and that the discipline is appropriate and generally consistent, and in doing so will review from the disciplining department head the results of his or her investigation and decision, with all supporting documentation or materials, and allow Mr. Dill the opportunity to present evidence barring (sic) on the issue to be determined by the Human Resources Department head that the employee was afforded due process and that the discipline is appropriate and generally consistent, and that the review by the Human Resources Department head will be documented so that any review undertaken thereafter may be conducted in a meaningful and substantive manner to determine whether such penalty was arbitrary and capricious.

The City filed an amended motion to strike Officer Dill's motion for back pay and benefits, and in August 2013 Officer Dill filed a motion to compel the City "to produce documentary evidence to effectuate the Order of the Tennessee Court of Appeals." In his motion, Officer Dill asserted that he

had requested that the City produce documentation "to support its claim of fairness and consistency in applying discipline or termination[ ]" and that the City had refused to do so. The City responded in opposition to the motion, asserting that Officer Dill had not made a formal discovery request, that "[u]ntil recently, he has never argued the need to conduct discovery and never asked or attempted to conduct discovery when [the] case was at the trial court for the initial certiorari review[,]" and that Officer Dill had "asserted he [had] evidence to support his claim that his discipline was inconsistent with other officer's discipline[,]" during the pendency of the lawsuit.

Following a number of cross-motions regarding the scope of discovery, Officer Dill's motion for back pay and benefits, and to set the matter for hearing, the City filed a motion to dismiss for failure to prosecute on October 17, 2013. An administrative hearing eventually was held on December 17, 2013, at which Officer Dill was represented by counsel. Following the hearing, Mr. Wyatt issued a memorandum in which he determined that Chief Ansley's decision to terminate Officer Dill was appropriate and that it was "generally consistent." After reviewing discipline measures resulting in the termination of other police officers and Officer Dill's employment record, Mr. Wyatt stated, "Chief Ansley's decision to terminate Officer Dill's employment was not arbitrary or capricious." He further stated that Officer Dill had been given an opportunity to explain and defend his actions, that Officer Dill "had been disciplined multiple times for conduct related to careless and reckless driving[,]" that termination of Officer Dill resulted after "progressive discipline[,]" that Officer Dill "was given ample opportunity to correct his behavior," and that Officer Dill's conduct was found to be "irresponsible, unnecessary, and danger-

ous." In written correspondence to Officer Dill's legal counsel dated March 31, 2014, Mr. Wyatt reviewed the progressive disciplinary measures taken against Mr. Dill, noted that thirty-one police officers had been terminated since Chief Ansley was appointed in September 2007, and determined that instances of discipline not resulting in termination were "dissimilar." Mr. Wyatt reiterated that the decision to terminate Officer Dill was appropriate and generally consistent, and attached his memorandum to the correspondence.

The trial court heard the matter on April 17, 2014. By opinion entered April 24, 2014, the trial court stated that the issue before the court pursuant to this Court's opinion in *Dill I* was "limited to whether the penalty was imposed in an arbitrary or capricious manner." Upon review of the transcript of the December 17 hearing, Mr. Wyatt's memorandum, and Mr. Wyatt's correspondence to Officer Dill's counsel, the trial court determined that the penalty was not arbitrary or capricious. The trial court further stated that all issues raised in the writ of certiorari had been resolved.

The City filed a motion for entry of a final order on April 29; Officer Dill filed a motion for clarification, for a final order, and for back pay on June 11. On June 25, 2014, the trial court entered an order incorporating its April 24 opinion. The trial court stated in its order that its review was limited to "whether the inferior body exceeded its jurisdiction or acted illegally, arbitrarily or fraudulently [,]" and that it had reviewed the matter accordingly. The trial court stated that, to its knowledge, "there [had] been nothing presented to the City of Clarksville concerning any issue of back pay." The court further stated that the issue of back pay was not before it and that its order was final. Officer Dill filed a timely notice of appeal to this Court.

## Issues Presented

Officer Dill presents the following issues for our review:

1. The trial court erred by failing to comply with this Court of Appeal's first decision and instructions on remand.

   A. By, AGAIN, erroneously finding that Respondent/City presented sufficient evidence to support Appellant's termination and compliance with its due process code.

   B. By, AGAIN, finding that the City's Human Resource Director provided the Court with sufficient information to render its decision that the termination was fair and consistent.

2. The trial court failed to grant Appellant back pay upon remand after his termination was reversed and vacated by this Court.

The issues presented by this appeal, as we perceive and restate them, are:

1) Whether the trial court correctly construed this Court's opinion on remand.

2) Whether, upon remand, the City met the requirements of Code § 1–1316(b) so as to provide Officer Dill with due process under the Code.

3) Whether termination of Officer Dill's employment was arbitrary or capricious.

4) Whether the trial court erred by determining that Officer Dill's motion for back pay was not properly before it.

## Standard of Review

■ This appeal arises from a petition for common law writ of certiorari. It is well-settled that the scope of judicial review under a common law writ of certiorari is "quite limited." *Heyne v. Metro. Nashville Bd. of Educ.,* 380 S.W.3d 715, 728 (Tenn.2012) (citations omitted). Upon review, the court may reverse or modify the decision of an administrative body or tribunal only upon determining that the action 1) violated a statutory or constitutional provision; 2) was made in excess of the agency's authority; 3) was based on unlawful procedure; 4) was arbitrary or capricious; or 5) was not supported by material evidence. *Demonbruen v. Metro. Bd. of Zoning Appeal,* 206 S.W.3d 42, 46 (Tenn.Ct.App.2005) (citation omitted). Our standard of review is the same as that of the trial court. *Id.* (citation omitted).

■ When the board or tribunal's decision is challenged on the basis that the record does not contain material evidence to support its decision, "sufficiency of the evidence is a question of law." *Lafferty v. City of Winchester,* 46 S.W.3d 752, 759 (Tenn.Ct.App.2000). Whether the board or tribunal acted illegally, arbitrarily, or fraudulently likewise presents a question of law. *Harding Acad. v. Metro. Gov't of Nashville and Davidson Cnty.,* 222 S.W.3d 359, 363 (Tenn.2007) (citation omitted). Construction of an order or judgment of a court also presents a question of law. *Corrozzo v. Corrozzo,* No. M2012-01317-COA-R3-CV, 2013 WL 4107625, at *7 (Tenn.Ct. App. Aug. 13, 2013) (citing *see Pruitt v. Pruitt,* 293 S.W.3d 537, 544–45 (Tenn.Ct. App.2008)). We review questions of law *de novo* with no presumption of correctness. *Harding Acad.,* 222 S.W.3d at 363 (citation omitted).

## Discussion

■ Use of the common law writ has been approved to provide relief from "(1) fundamentally illegal rulings, (2) proceedings inconsistent with essential legal requirements, (3) proceedings that effectively deny parties their day in court, (4) decisions that are beyond the decision-maker's authority, and (5) decisions that involve plain and palpable abuses of discretion." *Heyne,* 380 S.W.3d at 728 (citation omitted). Illegal, arbitrary, or fraudulent

acts for the purpose of review under the common law writ include: "1) the failure to follow the minimum standards of due process; 2) the misrepresentation or misapplication of legal standards; 3) basing a decision on ulterior motives; and 4) violating applicable constitutional standards[.]" *Harding Acad.*, 222 S.W.3d at 363 (citation omitted).

Judicial review under a common law writ of certiorari generally is limited to the record of the lower board or tribunal. *Wills v. City of Memphis*, 457 S.W.3d 30, 38 (Tenn.Ct.App.2014) (perm. app. denied Jan. 20, 2015) (citation omitted). The courts may not "redetermine the facts found by the entity whose decision is being reviewed ... evaluate the intrinsic correctness of a governmental entity's decision[,] ... reweigh the evidence or substitute their judgment for the judgment of the entity[.]" *Heyne*, 380 S.W.3d at 729 (citations omitted). Rather, the court must independently review the record to ascertain whether it contains " 'such relevant evidence that a reasonable mind might accept as adequate to support a rational conclusion.' " *Wills*, 457 S.W.3d at 38 (quoting *Lafferty v. City of Winchester*, 46 S.W.3d 752, 759 (Tenn.Ct.App.2000) (quoting *Hedgepath v. Norton*, 839 S.W.2d 416, 421 (Tenn.Ct.App.1992))). The reviewing court may consider additional evidence only to determine whether the board or tribunal exceeded its jurisdiction or acted in an arbitrary, illegal, or capricious manner. *Id.* (citation omitted).

### Scope of Remand under *Dill I* and Due Process

In order to ascertain whether the City complied with this Court's judgment in *Dill I* and provided Officer Dill with the process due under the Code, we turn first to the scope of our order on remand.[1] In his brief, Officer Dill asserts that the City was required to provide him with a hearing upon remand, and that the December 2013 hearing was a "sham" where Mr. Wyatt failed to respond to questions concerning disciplinary measures taken against other police officers. He asserts that, because the hearing transcript provides "nothing other than the refusals of Mr. Wyatt to answer any questions or provide any information," and because the trial court stated that it relied, in part, on the hearing transcript, the court relied, "[r]espectfully, [on] nothing." The City, on the other hand, asserts that the matter was remanded for further remand to the City's Human Resource Director for the limited purpose of determining whether the discipline taken against Officer Dill was "appropriate and generally consistent."

In *Dill I*, we observed that, although the record contained material evidence to support the City's decision to discipline Officer Dill, Officer Dill's due process rights were violated because the City failed to follow the procedures set forth in section 1–1316(f)(1)(b) of the City's Code. *Dill I*, 2012 WL 5431694, at \*4–5. We also determined that Officer Dill had been given notice of the charges against him and an opportunity to be heard. *Id.* at \*5. We held, however, that Chief Ansley's failure to refer the matter to the head of the human resources department before making the decision to terminate Officer Dill 1) violated his right to the process due under

---

1. We note that, although reference was made in the trial court to the "dissent" in *Dill I*, there was no dissenting opinion in *Dill I*. Rather, Judge Cottrell wrote a concurring opinion, stating that she would hold that the City's decision was arbitrary and capricious because it was not made in accordance with the procedures mandated by the City Code. *Dill I*, 2012 WL 5431694, at \*5 (Cottrell, J., concurring).

section 1–1316(f)(1)(b) and 2) did not afford the court the ability to review the decision to terminate Officer Dill to determine whether the decision was arbitrary or capricious. *Id.* We accordingly vacated the decision to terminate Officer Dill and remanded the matter for further remand to the City "for a determination of whether his proposed termination complies with Code § 11316(b)." Section 1–1616(b) provides, " 'Discipline will be equally applied and, to the [extent] possible, will be consistent and progressive in nature.' " *Id.* at *2 (quoting City Code § 1–1316(b)).

On remand, the City was required to fulfill the requirements of section 1–1316(f)(1)(b). It was required to forward the results of the investigation and the decision to the head of the human resources department, who, in turn, was required to determine whether Officer Dill was afforded due process and whether the discipline decision was appropriate and generally consistent. We stated that the determination of whether the discipline to be imposed was appropriate and consistent must be read in the context of section 1–1316(b)—*i.e.*, whether it was equally applied and consistent and progressive in nature.

It is undisputed that the City forwarded the results of the investigation and its decision to Mr. Wyatt, the head of human resources, for review upon remand. It also is undisputed that Mr. Wyatt conducted a thorough review, including a review of Officer Dill's employment/disciplinary record and disciplinary actions taken by Chief Ansley with respect to other officers, and that he concluded that termination of Officer Dill was appropriate and generally consistent. Mr. Wyatt supported this determination with examples of decisions to terminate the employment of other police officers. He additionally determined that termination of Officer Dill's employment

followed progressive disciplinary measures and supported this determination with a review of disciplinary actions taken against Officer Dill over the course of his career, including suspensions from service. Mr. Wyatt memorialized his review and determinations in a memorandum and in correspondence to Officer Dill's legal counsel, providing the trial court and this Court a basis upon which to review whether the decision to terminate Officer Dill was arbitrary or capricious.

Section 1–1316(f)(1)(b) does not require a hearing before the head of human resources, nor does it require the head of human resources to testify orally regarding disciplinary measures taken against other employees. In *Dill I*, we held only that Officer Dill must be afforded "the opportunity to present evidence bearing on" the question "of consistency of discipline[.]" *Dill I*, 2012 WL 5431694, at *5 n.7. Mr. Wyatt conducted a full review and concluded that the City's decision to terminate Officer Dill was appropriate and consistent. Further, it appears from the record that Officer Dill questioned Mr. Wyatt at the December 17 hearing about discipline received by specific officers, but did not seek formal discovery or notice Mr. Wyatt that he should have that information readily available at the hearing. Although Mr. Wyatt did not respond to specific inquiries at the hearing, he outlined discipline taken against other officers in his memorandum and correspondence to Officer Dill's counsel.

Officer Dill argues in his brief that Mr. Wyatt failed to determine that discipline was consistently applied where he examined only disciplinary actions taken by Chief Ansley and not actions taken under prior leadership. Although reasonable minds may differ with respect to the scope of time properly within the purview of a review for consistency, we observe that

Chief Ansley was named chief in September 2007, nearly three years before Officer Dill was terminated in August 2010. Moreover, Mr. Wyatt observed that thirty-one police officers had been terminated since September 2007, both before and after Mr. Dill; that the instances of inconsistent discipline alleged by Officer Dill arose from dissimilar situations; and that Officer Dill's prior disciplinary record "was far more extensive[.]"

The City fulfilled the requirements of the section of the Code upon remand and, upon review of the record, we are satisfied that the City cured the due process deficiencies identified in *Dill I* when affirming its decision to terminate Officer Dill. We are also satisfied that the record contains material evidence that discipline was equally applied and that it was consistent and progressive in nature as required by section 11316(b) of the Code.

### Whether the Decision was Arbitrary and Capricious

We turn next to whether the City's decision to terminate Officer Dill's employment with the police department was arbitrary and capricious. If an action is not supported by material evidence, it is arbitrary. *Demonbreun*, 206 S.W.3d at 46 (citation omitted). Further, "more than a scintilla or glimmer of evidence is required." *Pace v. Garbage Disposal Dist. of Washington Cnty.*, 54 Tenn.App. 263, 390 S.W.2d 461, 463 (1965). The evidence must be substantial, material, and relevant. *Id.* It must be evidence that "a reasonable mind might accept as adequate to support a rational conclusion and such as to furnish a reasonably sound basis for the action under consideration." *Id.* (citation omitted). "An arbitrary [or capricious] decision is one that is not based on any course of reasoning or exercise of judgment, or one that disregards the facts

or circumstances of the case without some basis that would lead a reasonable person to reach the same conclusion." *City of Memphis v. Civil Service Comm'n of City of Memphis*, 216 S.W.3d 311, 316–317 (Tenn.2007) (quoting *Jackson Mobilphone Co. v. Tenn. Pub. Serv. Comm'n*, 876 S.W.2d 106, 110–111 (Tenn.Ct.App.1993)).

As noted above, in *Dill I* we determined that the record contained substantial and material evidence to support the decision to terminate Mr. Dill. In his memorandum following the December 2013 hearing, Mr. Wyatt stated that the decision to terminate Officer Dill was based on:

General Order E12, Operation of police vehicles

General Order B-3 Rule 6—Personnel shall be courteous and orderly in their dealings with the public. They shall perform their duties quietly, avoiding harsh, violent, profane, or insolent language, and shall always remain calm regardless of provocation to do otherwise.

Rule 10—Conduct

Rule 90—Commission of misdemeanors

City Code 1317–1 Rule 5—Conduct below the standards of the department/Rule 11—Violation of rules of the department or any other failure of good behavior which reflects discredit upon an employee, the department, or the city government.

Mr. Wyatt further reviewed the behavior that led to the decision to terminate Officer Dill, stating:

Mr. Dill did pursue a speeding vehicle at a rate of 113 MPH, as well as driving in other dangerous manners such as passing on the right, etc. Even after the suspect was apprehended, Mr. Dill continued to drive in an incredibly irresponsible manner. This was not a felony suspect, and driving in this fashion was

both dangerous and unnecessary. Further, upon reviewing Mr. Dill's disciplinary history, I have concluded that progressive discipline was applied. Mr. Dill had been warned about the safety of his driving multiple times and had been suspended on seven (7) occasions, including other instances of failure to safely operate a vehicle, and other offenses.

Mr. Wyatt noted the following disciplinary actions previously applied to Mr. Dill:

Mr. Dill was given a fifteen (15) day suspension on February 28, 2008, for an avoidable accident that resulted in the total loss of a CPD vehicle. Other discipline includes a written reprimand May 19, 2010, a written reprimand May 16, 2009, a two (2) day suspension on May 15, 2009, a four (4) hour suspension on August 30, 2006, an eight (8) hour suspension on February 27, 2001, a fifteen (15) day suspension (for an avoidable traffic accident) on November 13, 1991, a one (1) day suspension on May 12, 1989, and a one (1) day suspension on March 6, 1989.

Mr. Wyatt outlined the differences between the circumstances of Officer Dill's conduct and those involving an officer specifically referenced by Officer Dill, stating:

I will specifically address the example pertaining to Officer C.,[2] as it was discussed at length during the HR hearing. Not only did this situation occur prior to Chief Ansley's role as department head, but it also differs in two significant ways: the nature of the incident and the disciplinary history of both officers. C. was responding to a call for backup due to a fight at Governor's Square Mall in which one person was reported down (a

seemingly more serious event than a speeding motorist). C. had emergency equipment engaged until the call for backup was terminated. Shortly after he turned off his emergency equipment, a motorist turned in front of him and C. collided with the motorist. The need for urgency in this situation is clear. Second, Mr. Dill's prior discipline was far more extensive; Dill had been recently suspended for an avoidable accident, and C. had not been.

It is the law of the case that the decision to terminate Officer Dill was supported by material evidence.[3] Upon review of the record following remand, we are satisfied that the decision to terminate Officer Dill's employment, effective August 9, 2010, was neither arbitrary nor capricious.

## Holding

In light of the foregoing, the judgment of the trial court is affirmed. Remaining issues are pretermitted as unnecessary in light of this opinion. Costs on appeal are taxed to the Appellant, Jimmy Dill, and his surety, for which execution may issue if necessary. This matter is remanded to the trial court for enforcement of the judgment, the collection of costs, and any further proceedings as may be necessary and consistent with this opinion.

---

**2.** We use the officer's initial in the interests of privacy.

**3.** The law of the case doctrine "prohibits reconsideration of issues that have already been

decided in a prior appeal of the same case. " *Memphis Pub. Co. v. Tennessee Petroleum Underground Storage Tank Bd.,* 975 S.W.2d 303, 306 (Tenn.Ct.App.1998) (citation omitted).